JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Kim P. Gunter
519 Ramsey Road, Oreland, PA 19075

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Karin M. Gunter, Esquire (215) 548-9992
85 Old Cedarbrook Road, Wyncote, PA 19095

## DEFENDANTS

Drexel University
3141 Chestnut Street, Philadelphia, PA 19104

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability / [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle / [ ] 370 Other Fraud | [ ] 880 Defend Trade Secrets Act of 2016 | | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability / [ ] 371 Truth in Lending | **LABOR** | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury / [ ] 380 Other Personal Property Damage | [ ] 710 Fair Labor Standards Act | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice / [ ] 385 Property Damage Product Liability | [ ] 720 Labor/Management Relations | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | [ ] 740 Railway Labor Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| | | [ ] 751 Family and Medical Leave Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights / **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee | | | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [X] 442 Employment / [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations / [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment / [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other / [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education / [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | | |
| | [ ] 555 Prison Condition | | | |
| | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. section 1981

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ 150,000+

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [X] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE June 27, 2023

SIGNATURE OF ATTORNEY OF RECORD *Karin M. Gunter*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

5/2023

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _519 Ramsey Road, Oreland, PA 19075_

Address of Defendant: _3141 Chestnut Street, Philadelphia, Pa 19104_

Place of Accident, Incident or Transaction: _3141 Chestnut St, Phila, Pa 19104_

---

**RELATED CASE IF ANY:**

Case Number: _____ Judge: _____ Date Terminated _____

Civil cases are deemed related when **Yes** is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit Pending or within one year previously terminated action in this court?   Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier Numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ **is not** related to any now pending or within one year previously terminated action in this court except as note above.

DATE: _6/27/2023_     _Karin M Gunter_ (signature)     _79852_

Attorney-at-Law *(Must sign above)*     Attorney I.D. # (if applicable)

---

**Civil (Place a √ in one category only)**

**A.** *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☒ 8. Employment
☐ 9. Labor-Management Relations
☐ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. All Other Federal Question Cases. *(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. All Other Diversity Cases: *(Please specify)* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration)*

I, _Karin M Gunter_ , counsel of record *or* pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2 § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: _6/27/23_     _Karin M Gunter_ (signature)     _79852_

Attorney-at-Law (Sign here if applicable)     Attorney ID # (if applicable)

NOTE: A trial de novo will be a jury only if there has been compliance with F.R.C.P. 38.

Karin M. Gunter, Esquire
PA ID No. 79852
Law Office of Karin M. Gunter
85 Old Cedarbrook Road
Wyncote, PA 19095                                    ATTORNEY FOR PLAINTIFF,
(215) 548-9992                                        KIM P. GUNTER

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA


KIM P. GUNTER,                          :
519 Ramsey Road                         :
Oreland, PA 19075                       :
                  Plaintiff             :        Civil Action No.:
                                        :
        v.                              :
                                        :
DREXEL UNIVERSITY,                      :
3141 Chestnut Street                    :
Philadelphia, PA 19104                  :
                  Defendant.            :


## COMPLAINT

### Preliminary Statement

Plaintiff Kim P. Gunter is a seasoned privacy and compliance officer with more than

twenty years of experience with multiple top tier employers.  She has worked with a diverse

array of direct reports enjoying productive professional relationships, leading her teams to

quality program development, investigations, and results. After two failed searches by Defendant

Drexel University for a Vice President and Chief Compliance, Privacy and Internal Audit Officer

between January 2018 and June 2019, Plaintiff successfully competed and attained the position

effective July 2019, after a "comprehensive national search," based on her "exceptionally strong

project management and leadership skills, as well as her experience building compliance

programs and implementing policies, controls and trainings."  In the four years since her hiring,

Plaintiff with her team of direct reports in the Compliance and Privacy departments have been

able to provide much needed leadership to the University and through these disciplines.

However, with respect to the Internal Audit department, Plaintiff made multiple reports to her immediate supervisor and the Audit Committee, Board of Trustees chair (both of whom are Caucasian) of discrimination, hostile work environment, retaliation and insubordination by a Caucasian direct report, Plaintiff's subordinate, starting in August 2019.  As a result of executive management's failure to respond to known discrimination, retaliation and hostile work environment caused by the Caucasian direct report, Plaintiff suffered anxiety, depression, and was taken out of work for short-term disability and FMLA leave.  Upon return from such leave in November 2022 and for the first time, Plaintiff's immediate supervisor gave Plaintiff a performance evaluation calling into question Plaintiff's character and professionalism.

Despite assurances of their support and resolution, both Plaintiff's immediate supervisor and the Audit Committee chair failed to take any actions to correct the situation until December 2022, when the Caucasian direct report was promoted to reporting directly to Plaintiff's immediate supervisor, thereby removing Internal Audit and its annual budget from Plaintiff's management without assigning any other reporting departments to her.  By doing so, Plaintiff's total annual budget under management was reduced by nearly 60%, which changed the very nature of the position Plaintiff applied for.  That is, Plaintiff now oversees the Office of Compliance, Policy and Privacy Services, which alters her overall strategic management of risk for the university; impacts the financial value of her office university wide; and professionally significantly limits and reduces her professional growth, progression and expertise at Drexel.

This action is brought by an employee against her employer for discrimination based on race/color in violation of Civil Rights Act of 1866, 42 U.S.C. §1981, *as amended* by the Civil Rights Act of 1991 ("Section 1981") for disparate treatment, retaliation, and hostile work

environment.  Plaintiff seeks compensatory and punitive damages, attorney's fees, expert fees, costs and such other relief as this Court deems just and proper.

## Jurisdiction and Venue

1. Original jurisdiction over Plaintiff's federal question claims is conferred upon this Court pursuant to 42 U.S.C. § 2000e-5(f)(1) and 28 U.S.C. §§ 1331 and 1343.

2. Venue lies in this district by 28 U.S.C. § 1391(b) and (c) in that all actions complained of occurred and Defendant resides in this district.

## Parties

3. Plaintiff KIM P. GUNTER ("Plaintiff" or "Gunter") is an adult person and a citizen of the United States.

4. Defendant DREXEL UNIVERSITY ("Drexel" or "University") is a private, non-profit institution of higher learning with more than 500 employees.

## Underlying Facts

5. After Drexel conducted a "comprehensive national search," Plaintiff successfully competed and attained the position of Vice President and Chief Compliance, Privacy and Internal Audit Officer (VP CPIA) at Drexel effective July 8, 2019.

6. Before hiring Plaintiff, Drexel conducted two failed searches to fill the VP CPIA position.

7. The VP CPIA position at Drexel remained unfilled from on or about January 2018 until July 8, 2019.

8. Drexel selected Plaintiff for its VP CPIA position based on her "exceptionally strong project management and leadership skills, as well as her experience building compliance programs and implementing policies, controls and trainings."

9.   Plaintiff is an African American, black adult.

10. Plaintiff is qualified for the position of VP CPIA.

11. Helen Y. Bowman ("Bowman") is Executive Vice President, Treasurer and Chief Operating Officer at Drexel.

12. Bowman is Plaintiff's immediate supervisor.

13. Bowman is Caucasian/white.

14. Ed Longazel ("Longazel") is the immediate past VP CPIA at Drexel from on or about February 2015 to December 2017, until his retirement.

15. Bowman was Longazel's immediate supervisor.

16. Longazel is Caucasian/white.

17. Bill Shea ("Shea") is Associate Vice President, Chief Audit Executive at Drexel.

18. Shea is Caucasian/white.

19. Plaintiff was Shea's immediate administrative supervisor from July 8, 2019 until on or about December 2022, when Drexel removed Internal Audit from Plaintiff's management and promoted Shea to reporting directly to Bowman.

20. Shea and the internal audit team members, at all times during Plaintiff's employment up to December 2022, were Plaintiff's subordinates.

21. Longazel was Shea's immediate administrative supervisor from February 2015 to December 2017.

22. Michael J. Williams ("Williams") is Chair of the Audit Committee, Board of Trustees ("Audit Committee") at Drexel.

23. Williams is Caucasian/white.

24. The Audit Committee has operational oversight of Internal Audit and Shea regarding

audit work product.

**Count I**

**Hostile Work Environment**                                        **Race, Color – Discrimination**

25. Plaintiff re-avers and incorporates by reference the averments in all paragraphs, *supra.*

26. As VP CPIA, Plaintiff led and managed Compliance, Privacy and Internal Audit budgets totaling nearly $2.0 million for fiscal year 2020, her first year in the position.

27. The budgets include salary and non-salary expenses for each department.

28. As VP CPIA, Plaintiff had the following responsibilities related to the Internal Audit department:

    a.   administrative oversight of hiring, firing and promoting its employees, and university-wide audit special projects, programs and assignments;

    b.   management of its budget;

    c.   preparation and review of Shea's annual performance evaluation;

    d.   approval of leave time for Shea;

    e.   securing office space for department as a result of new office space for team;

    f.   regular group team meetings for all Office of Compliance, Privacy and Internal Audit ("OCPIA") teams;

    g.   annual meetings with each individual OCPIA team member; *inter alia,*

29. With respect to Compliance and Privacy, Plaintiff oversees all ongoing work product related to the development, implementation, maintenance of, and adherence to Drexel's policies and procedures covering privacy of and access to sensitive information in compliance with federal, state and local regulatory requirements, and to Drexel's Code of Conduct, Conflict of Interest program, and Compliance Hotline program.

30. The sensitive information includes student and patient information, *inter alia*.

31. As VP CPIA, Plaintiff's management leadership team included Shea.

32. From the beginning of her employment at Drexel, Plaintiff excelled in the position as VP CPIA including, but not limited to:

    a.  spearheading significant reporting to federal and state governments of breaches impacting patient/student information;

    b.  notification to impacted persons of such breaches;

    c.  responses to federal and state government audits and reviews;

    d.  implementation of compliance and policy programs;

    e.  creation of University compliance and privacy plans;

    f.  OCPIA reorganization;

    g.  implementation of Drexel's first policy review and compliance program;

    h.  design and implementation of Drexel's first Compliance Risk Assessment;

    i.  revamped Drexel's Compliance Hotline program;

    j.  developed Drexel's monthly compliance newsletter with a monthly blog; and

    k.  worked closely with the University's Office of General Counsel for contracting vendors to assist with compliance and privacy work, reviewing contracts, advice on interpretation of laws regarding breaches and other incidents, and for incident handing and investigations, *inter alia*.

33. Equally, from the beginning of her employment at Drexel, Plaintiff experienced persistent and repeated insubordination from Shea and the internal audit team including, but not limited to:

    a.  August 2019, Shea excluded Plaintiff from the interview process and hired

Michael D'Arco ("D'Arco")(Caucasian/white) as Executive Director, Internal Audit without getting Plaintiff's prior approval from a management oversight perspective;

     b.   August – September 2019, Plaintiff put in place an initiative to streamline the OCPIA's website to produce more efficiency and ease of use by the University community. Shea resisted Plaintiff's directives to provide updates to Internal Audit information delaying the project by several weeks;

     c.   In September 2019, during Plaintiff's newly implemented OCPIA team meeting, Shea discussed whether he was "arrogant" based on a separate matter not involving the OCPIA team.  Plaintiff ended Shea's inappropriate, impromptu monologue but not before it undermined her leadership of the team and OCPIA morale.

     d.   September 2019, Plaintiff produced a 100-day report and three-year plan, which Shea challenged because it mentioned Internal Audit.  Williams, who saw nothing wrong with the report, had Plaintiff edit it based on Shea's behavior;

     e.   On October 16, 2019, Plaintiff learned Shea announced to the Dean, School of Engineering and Associate Vice President, Human Resources that he reports to Plaintiff administratively because "someone has to sign his time sheet;"

     f.   Thereafter, Plaintiff informed Bowman of Shea's conduct in resisting her authority and leadership and its impact on team moral;

     g.   On December 19, 2019, Plaintiff allotted 2% merit increases to all OCPIA employees based on University wide budget pool.  Shea, without first getting approval from Plaintiff and without knowledge of executive management level directives, told Internal Audit employees they would get 3% merit increases, and argued with Plaintiff over the difference;

     h.   On January 28, 2020, Plaintiff initiated the creation of an audit email box to

provide more consistency across OCPIA and to help the University community contact Internal

Audit. The Compliance and Privacy departments already had email boxes.  Shea once again

delayed the process before eventually creating the audit email box.

      i.   On March 19, 2020, Plaintiff emailed her leadership team including Shea

regarding the immediate COVID-19 shut down. Shea responded, "Why are you sending this

text?"

      j.   On April 6, 2020, despite Shea's consistent challenges to her authority, Plaintiff

asked Shea, during her leadership team meeting, to serve as her proxy in the event she contracted

COVID.  He once again challenged Plaintiff stating, he couldn't be her "back up because I don't

do compliance." At that time, Shea was the senior most OCPIA leadership team member.  Also

present were Jamie Lindsay ("Lindsay")(Caucasian/white), Director, Compliance Program

Services and A. Tryphaena Hooper ("Hooper")(African American), Director, Privacy Program

Services;

      k.   One week later, on April 13, 2020, at another OCPIA leadership team meeting,

Shea told Plaintiff she needs to run things by him before Plaintiff communicates with the internal

audit team.  This inappropriate demand came after Plaintiff discussed the OCPIA move at an

office team meeting, which includes all employees of OCPIA;

      l.   On April 16, 2020, at her one on one (1:1) meeting with Bowman, Plaintiff once

again told Bowman of Shea's continued resistance towards her authority and leadership; and

      m.  On April 22, 2020, Plaintiff sent Bowman a follow-up email and written

documentation of Shea's continued hostile actions towards her.  Bowman failed to follow up

with Plaintiff about any actions taken against Shea, *inter alia*.

    34. During her first year as VP CPIA, Plaintiff held bi-weekly 1:1 meetings with Shea.

35. Shea's hostile actions towards Plaintiff and her authority/leadership over him and the Internal Audit department continued, when in a quarterly Audit Committee meeting, Shea complained that he should not be reporting to Plaintiff and internal audit should not be under Plaintiff's administrative management.

36. Thereafter on November 16, 2020, as a result of Shea's complaints, Bowman emailed Plaintiff with a list of new titles for her position as Bowman was considering removing "Internal Audit" from VP CPIA title.

37. Subsequently, Bowman changed Plaintiff's job title to Vice President and University Chief Compliance and Privacy Officer ("VP CP"), which it remains today.

38. After Plaintiff's job title change, Williams told Plaintiff she did not need to meet with Shea as often as Compliance and Privacy, and to only meet with Shea for their 1:1 meetings once every one or two months.

39. On December 14, 2020, while attending a "Working Through Social Identities Towards Empathy and Inclusion Workshop" given by the University's Diversity and Inclusive Culture office, Plaintiff in the presence of Bowman commented that as a Black woman who is filing a role that had been filled by a white man, she is often treated differently.  Bowman did not comment or follow-up with Plaintiff after the workshop.

40. Longazel, Shea's prior administrative immediate supervisor, was not required to change the VP CPIA job title.

41. In January 2021, Shea emailed Plaintiff in a communication that included Lindsay asking them to "change the heading to make it just Compliance and Privacy and take Internal Audit off because the Internal Audit department doesn't have anything to do with this committee membership.  Also, Kim's title should be updated" to remove internal audit from it.

42. Shea's and the internal audit team continued to challenge and create hostile team/work environment for Plaintiff by failing to respond to Plaintiff's team directives and making demands of Plaintiff regarding team meetings including challenging her 1:1 meetings of the internal audit team, *inter alia,* culminating on September 29, 2021, when D'Arco stated to Plaintiff during a virtual office team meeting she was "talking too fast" and her communications were "all over the place."  D'Arco further stated Plaintiff needed to provide an agenda and challenged her annual 1:1 meetings with internal audit.  Shea said nothing to his direct report, D'Arco during this OCPIA meeting.

43. On September 30, 2021, Plaintiff reported D'Arco's and Shea's hostile behavior towards her during the prior day's office team meeting to Bowman, and expressed Plaintiff's inability to provide performance reviews or recommend any merit increases for the internal audit team.  Bowman told Plaintiff she (Bowman) would follow up with Human Resources, meet with the internal audit team and that Shea will receive a "***final warning***". (emphasis added)

44. Bowman also expressed her unwillingness to move internal audit from Plaintiff's responsibility since "the structure is in keeping with other universities and the intention is that there be collaboration."

45. Bowman in a September 30, 2021 email to Shea and the internal audit team stated "I will be setting up a meeting with myself, Xavier Johnson ("Johnson") from Human Resources and internal audit to discuss issues that have occurred since Kim's arrival that I view as unnecessary.  Prior to setting this meeting up, I am meeting with Mike Williams to ***again*** discuss this … " (emphasis added)

46. Bowman did not provide Plaintiff with a follow-up regarding Shea's final warning status.

47. Shea's hostile actions towards Plaintiff continued and heightened on June 3, 2022, when Shea sent an unsolicited email to Plaintiff titled "Clean Up Items Identified," identifying, *inter alia*, Plaintiff's job title (again) and items in her professional bio that "should be modified." Plaintiff sent the email to Bowman.

48. On June 6, 2022, after Plaintiff sent Bowman another email from Shea, Bowman says to Plaintiff to "wait 24 hours to speak to [Shea] because ***Plaintiff*** overreacted in her responses." (emphasis added)

49. For the first time, on July 26, 2022, Plaintiff learned from Johnson of a HR incident between D'Arco and Raffaele Fusca ("Fusca")(Caucasian/white) and the completion of the HR investigation. Johnson informs Plaintiff that Shea should have told Plaintiff about the incident, though Shea did not.

50. On July 27, 2022, at Bowman's directive, Plaintiff emailed Shea to request a discussion regarding, *inter alia*, D'Arco's behavior during an office team meeting earlier that day and the HR incident.

51. During the call with Shea, Plaintiff requested information about the incident between D'Arco and Fusca.  Shea would not provide the information and stated to Plaintiff he would need HR to tell him he could give the information to Plaintiff.

52. That same day, July 27, 2022, Plaintiff emailed Johnson to schedule a meeting with Bowman, Plaintiff and Johnson, which occurred on August 2, 2022.

53. During the August 2, 2022 meeting, Bowman once again stated Shea needed a written ***final warning***, and that Plaintiff should not have to deal with the stress of this relationship and that Plaintiff has been dealing with Shea's behavior since she arrived at Drexel, *inter alia*. (emphasis added)

54. On August 8 and 9, 2022, Plaintiff told Johnson she wanted "documented, written details of [Shea's] insubordination, race discrimination and creation of hostile work environment" and that she "cannot continue to have this stress."

55. On August 10, 2022, Johnson informed Plaintiff, upon her request, he would formally start an investigation into Shea.

56. On August 17, 2022, Plaintiff again asked Johnson if there was an HR investigation of and any formal findings of Shea's conduct.

57. On August 18, 2022, Plaintiff was taken out of work by her doctor on a leave of absence (LOA) and Family Medical Leave (FMLA) until October 24, 2022, and informed her leadership team she would be "out of the office" for a while.

58. On August 18, 2022, Plaintiff also emailed Johnson and the Director, HR Business Partner that she was "under a lot of stress" and [her] therapist asked for paperwork for short term disability and asked who she should contact for the documents.  The Director responded.

59. Despite this, Johnson continued to email Plaintiff regarding the Shea matter on August 22, 23 and 25, 2022 including asking about her attendance at a meeting with Shea.

60. Plaintiff was out of work for short term disability and FMLA from August 18, 2022 to October 24, 2022 due to work related stress.

61. Upon returning to the office, Plaintiff attended a scheduled office team meeting on October 26, 2022.  None of the internal audit members attended.

62. On October 27, 2022, Plaintiff informed Bowman of the entire internal audit team's absence from the office team meeting, and informed Bowman she could not provide a good performance evaluation for Shea.

63. Bowman required Plaintiff to provide a performance evaluation for Shea, and

Plaintiff complied on or before October 31, 2022 or November 1, 2022.

64. On October 31, 2022, Plaintiff again followed up with Johnson seeking the status of her HR complaint against Shea. Plaintiff also included Kimberly Gholston ("Gholston"), Vice President and Chief Diversity Officer on the email.

65. Plaintiff asked Shea if he wanted to discuss the performance evaluation, but Shea did not respond to Plaintiff.

66. Johnson responded on November 1, 2022 stating he was not available until next week to discuss with Plaintiff a formal complaint against Shea. Johnson also had not undertaken a formal complaint or investigation into Shea.

67. Though Johnson failed to start an HR investigation regarding Shea based on Plaintiff's complaint, on November 3, 2022, Johnson scheduled a performance review discussion with Plaintiff, Shea and Johnson for November 8, 2022, which did not occur.

68. On November 11, 2022, for the first time in her career at Drexel, Bowman called into question Plaintiff's professionalism and character.

69. Instead, Plaintiff, Shea and Johnson met on November 11, 2022 to discuss Shea's performance evaluation but, once again, not Plaintiff's HR complaint against Shea.

70. Thereafter, Plaintiff informed Bowman that the meeting with Johnson and Shea did not go well.

71. On November 13, 2022, Plaintiff again emailed Bowman noting her treatment by Shea, the internal audit team, and the lack of support by Bowman in addressing the same since Plaintiff's arrival at Drexel.

72. Between November 11, 2022 and November 18, 2022, Plaintiff sent a list of Shea's pattern of harassment and hostile work environment treatment to Bowman, who then asked

Plaintiff to send the list to Johnson.  Johnson responded by thanking Plaintiff for "outlining" her "concerns" regarding Shea.

73. On December 9, 2022, Johnson emailed informing Plaintiff he "worked with Helen and Mike" and that Shea would no longer report to Plaintiff administratively. Johnson further asked Plaintiff if she had time "to connect about finalizing your formal complaint."

74. On December 12, 2022, Bowman informed Plaintiff via email that the Compliance, Policy, Privacy and Internal Audit teams' change in reporting structure.

75. On January 11, 2023, for the first time since on or about August 8, 2022, Johnson finally meets with Plaintiff regarding her HR complaint against Shea.  At this time, Johnson informed Plaintiff her complaint of discrimination, harassment/hostile work environment, insubordination and other HR issues would go to outside counsel.

76. Plaintiff had to follow up with Johnson on February 5, 2023 as she still had not heard from anyone regarding her complaint.

77. On February 24, 2023, Plaintiff finally received an official letter of investigation from Johnson into her complaints against Shea.

78. On March 1, 2023, Jesse Krohn ("Krohn")(Caucasian/white) of Saul Ewing emailed Plaintiff identifying herself as the investigator for Plaintiff's Equity and Inclusive Culture ("EIC") complaint against Shea.

79. Plaintiff actively participated in the outside investigation by meeting with Krohn, providing documents and information in support of her claims, *inter alia*, for the period from March 1, 2023 to April 11, 2023.

80. Plaintiff subsequently learned during Krohn's investigation that Krohn is a former employee of Drexel's Office of Equality and Diversity as an investigator.

81. On May 9, 2023, Krohn emails Plaintiff a draft report with exhibits that were all the interview notes, and an excerpt from the EIC-1 that did not include findings or conclusions.

82. On May 30, 2023, for the first time ever, Plaintiff received notice via an email that Shea filed an internal discrimination claim against Plaintiff based on his race as a "white man".

83. On June 7, 2023, Plaintiff receives the EIC-1 determination finding no discrimination based on race in violation of Drexel's policies, *inter alia*. There was no direct mention of the hostile work environment/harassment claims.

84. At this time, Plaintiff learned her October 2022 performance evaluation of Shea was thrown out as an "outlier," *inter alia.*

85. On June 13, 2023, an outside investigator from the office of Jackson Lewis PC in Washington, DC, Carol Ashley ("Ashley")(African American) contacted Plaintiff regarding the Shea discrimination complaint.

86. At no time ever during Plaintiff's employment at Drexel did anyone including, but not limited to, Bowman, Williams or any member of the various committees Plaintiff is/was a member of at Drexel, raise any complaints by Shea that Plaintiff treated him unfairly, in general and based on his race, in particular.

87. Based on the foregoing, Plaintiff avers Drexel violated Section 1981 and discriminated against her as follows:

      a.   Plaintiff was subject to severe or pervasive conduct by Drexel that affected her ability to do her job.

      b.   Drexel's conduct by Bowman and Williams was influenced by Shea's persistent hostile behavior towards Plaintiff and was not welcomed by Plaintiff.

      c.   Drexel's conduct was motivated by the fact that Plaintiff is an African American,

black person.

   d. Drexel's conduct is so severe or pervasive that a reasonable person in Plaintiff's position would find her work environment to be hostile or abusive.

   e. Plaintiff believes her work environment to be hostile or abusive is a result of Drexel's supervisors Bowman's and Williams' conduct as well as direct report Shea's actions.

   f. Plaintiff suffered an adverse tangible employment action as a result of the hostile work environment including, but not limited to, loss of total budgets under her management and removal of the Internal Audit department without assigning any other reporting departments to her resulting in emotional distress, *inter alia*.

  88. Plaintiff was subject to severe or pervasive conduct by Drexel that affected her ability to do her job.

  89. Based on the foregoing, Plaintiff avers Drexel created a hostile work environment under Section 1981.

**Count II**

**Disparate Treatment**          **Race, Color – Discrimination**

  90. Plaintiff re-avers and incorporates by reference the averments in all paragraphs, *supra*.

  91. Non-protected class (Caucasian/white) VP CPIA Longazel was treated more favorable by Drexel than Plaintiff including, but not limited to, permitting Shea to cause Drexel to change Plaintiff's job title at the request of Shea and permitting Shea to cause Plaintiff to lose nearly 60% of the budget under her management by the removal of Internal Audit department from her administrative management responsibilities, *inter alia*.

  92. Drexel treated Longazel more favorably than Plaintiff by not placing Shea on progressive disciplinary actions including, but not limited to, final warnings after Plaintiff's

numerous reporting of discrimination.

93. Plaintiff as a protected class (African American, black) member was not being afforded the same terms and conditions of employment as non-protected class (Caucasian/white) VP CPIA Longazel due to Shea's consistent and persistent attacks on Plaintiff including reporting complaints to the Audit Committee without Plaintiff's presence or knowledge, dispute Bowman allegedly giving Shea written final disciplinary warnings due Shea's treatment of Plaintiff.

94. Drexel is vicariously liable for the actions of its supervisors Executive Vice President, Treasurer and Chief Operating Officer Bowman and Audit Committee, Board of Trustees Chair Williams, who treated similarly situated non-protected class (Caucasian/white) Longazel differently and more favorably than Plaintiff, a protected class (African American, black) VP CPIA due to Shea's bias towards Plaintiff.

95. Further, Drexel failed to provide Plaintiff with the same terms and conditions of employment when in failed to discipline Shea, despite Plaintiff's numerous reports of his behavior to Bowman and Williams, who both assured Plaintiff if the choice was between Plaintiff and Shea, they would choose Plaintiff.

96. Plaintiff suffered adverse employment actions when Drexel supervisors removed Internal Audit department from Plaintiff's administrative management oversight, which significantly reduced the budget under Plaintiff's management, and frustrated the stated purpose of the Plaintiff's position being "the structure [having internal audit under the auspices of OCPIA] is in keeping with other universities and the intention is that there be collaboration."

97. Drexel's continued to intentionally discriminate against Plaintiff based on race adversely affected Plaintiff's employment since, her new reduced budget and offices under

management limits and reduces her professional growth, progression and expertise in the compliance, privacy and policy disciplines.

98. Drexel's intentional discriminatory conduct would have adversely affected a reasonable person of the same protected class as Plaintiff.

99. Drexel's intentional discriminatory conduct toward Plaintiff as averred herein shows the existence of circumstances that give rise to an inference of prohibited discrimination.

100.   As a result of Drexel's intentional discrimination, Plaintiff suffered injuries including, but not limited to, physical and emotional injuries, *inter alia*.

101.   Based on the foregoing, Plaintiff avers Drexel violated Section 1981 based on disparate treatment.

**Count III**

**Retaliation**                                                                 **Race, Color -Discrimination**

102.   Plaintiff re-avers and incorporates by reference the averments in all paragraphs, *supra.*

103.   Based on the allegations, *supra*, Plaintiff made numerous complaints and reports to Bowman and Williams about Shea during the periods from on or about April 2020 to the present based on race discrimination by Shea from August 2019 to the present.

104.   Plaintiff engaged in protected activities when she reported race discrimination to Johnson on or about August 8, 2022 to March 1, 2023, when Drexel finally contracted with an outside investigator to conduct an investigation of its internal policies, *supra.*

105.   On May 9, 2023, the outside investigator sent Plaintiff a draft report.

106.   On May 30, 2023, Plaintiff received notice Drexel allowed Shea to file a complaint of reverse discrimination against Plaintiff.

107.   As a result of participating in these protected activities, Drexel engaged in a

course of action including, but not limited to:

a.   maintaining a complaint of reverse race discrimination by Shea against Plaintiff when Plaintiff never received any performance evaluations, 1:1 meeting discussions or warnings by her Drexel supervisors of complaints or reports of unfair treatment of Shea and Shea demonstrated persistent bias towards Plaintiff;

b.   Bowman failed to issue written final warnings against Shea despite stating multiple times that she would in acknowledgment of Shea's behavior towards Plaintiff;

c.   removal of internal audit from Plaintiff's administrative management without assigning any other reporting department to her causing a significantly impact on Plaintiff professional growth, progression and expertise at the University and the industry at large; and

d.   causing significant emotional distress to Plaintiff resulting in her being taken out of work by her therapist/doctor in August 2022 and June 2023.

108.   Based on the foregoing, Plaintiff avers Drexel retaliated against her in violation of Section 1981.

**Respectfully submitted:**

LAW OFFICE OF KARIN M. GUNTER

Date: June 27, 2023                          /s/ Karin M. Gunter
                                                    Karin M. Gunter, Esquire
                                                    PA Supreme Court Id: 79852
                                                    85 Old Cedarbrook Road
                                                    Wyncote, PA 19095
                                                    (215) 548-9992
                                                    Email: Kgunterlaw2@gmail.com
                                                    Counsel for Plaintiff